IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHERYL BRENNER, MEGAN EDWARDS,
AUDREY CLOSE, MITZI FRENCH-HITTI,
CASANDRA HUBER, NALINEE MORRIS,
BRENDA WILSON

    Plaintiffs,

v.    CIV NO. 00-01091 PJK/WWD ACE

RAN KEN, INC., a Texas Corporation,
d/b/a CHELSEA'S'S LONDON PUB & GRILL,
FARMINGTON LONDON PUB, INC.,
a New Mexico Corporation, d/b/a
CHELSEA'S'S LONDON PUB & GRILL,
W. GREGGORY HAMILTON, an
individual, TERRY McDANIEL, an
individual, and PETER KUCH, an individual,

    Defendants.

### PLAINTIFFS' REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON SUCCESSOR LIABILITY OF DEFENDANT RAN KEN, INC.

Plaintiffs request that the Court enter the following findings of fact and conclusions of law on the successor liability of Defendant RAN KEN, Inc. ("RAN KEN"):

### Findings of Fact

1. Plaintiffs are, or at the time of filing of this suit were, residents of New Mexico and former employees of Farmington London Pub, Inc. ("FLP").

2. Plaintiffs have asserted against FLP, among other claims, claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §



1

2000e *et seq.*, the New Mexico Human Rights Act, N.M.Stat.Ann. § 28-1-1 *et seq.* and the state common law tort of retaliatory discharge.

3. RAN KEN, a Texas corporation, is an employer and at all times material hereto it has met the coverage requirements of both Title VII and the New Mexico Human Rights Act.

4. From approximately 1982 until about October 1, 1999 FLP owned and operated a restaurant and bar in the Animas Valley Mall in Farmington, New Mexico called Chelsea London Pub.

5. From inception in 1982 until October 1, 1999 FLP licensed the Chelsea London Pub name and concept from RAN KEN and, pursuant to that licensing agreement, received from RAN KEN both startup and periodic assistance with regard to operational issues.

6. On or about October 1, 1999 RAN KEN purchased substantially all the assets of FLP. RAN KEN's purpose in purchasing those assets was to own and operate the Chelsea London Pub in the Animas Valley Mall. The contract of sale expressly contemplated RAN KEN's continued operation of the Chelsea London Pub and RAN KEN's intent to assume the employment contracts of FLP's management employees.

7. In fact, RAN KEN did continue to operate the Chelsea London Pub in the Animas Valley Mall in Farmington, New Mexico, the same location utilized by FLP, and continues to operate it to this day.

8. RAN KEN began operating the restaurant on the closing date, October 1, 1999 with no hiatus in operations.

9. In its operation of the Farmington Chelsea London Pub, RAN KEN employed the exact same managers as FLP employed to manage the restaurant and it employed the same employees as FLP had employed to work in the restaurant.

10. RAN KEN used the same job classifications in its operation of the restaurant as did FLP and it utilized all the same fixtures.

11. The restaurant maintained the same British antique theme under RAN KEN as it had under FLP and a customer visiting the restaurant shortly before the sale to RAN KEN and shortly after would have noticed hardly any difference.

12. Initially, the only changes were minor, cosmetic changes and back-office changes to such things as the inventory control system. These in no way changed the essential nature of the "product" being produced and sold by RAN KEN, which was the same "product" as that produced and sold by FLP.

13. Plaintiffs Brenner and Edwards filed charges with EEOC in November 1998.

14. Before the sale was consummated on October 1, 1999 FLP personnel advised RAN KEN of the existence of these charges. Defendant Greggory Hamilton advised RAN KEN of these charges in late 1998 and Bentley Hamilton, a shareholder in and attorney for FLP, advised RAN KEN of the existence of the charges during the time the sale transaction was being negotiated in August and September 1999.

15.     Furthermore, RAN KEN employed FLP managers Charles Wages and Peter Kuch as management employees of RAN KEN. Both Wages and Kuch were aware of the charges and their knowledge is imputed to RAN KEN.

16.     RAN KEN performed virtually no due diligence prior to closing the transaction with FLP. The contract of sale contains no representations or warranties regarding outstanding charges or claims and RAN KEN took no steps to apprise itself of the existence of employment discrimination charges prior to the closing of the transaction despite the fact that RAN KEN's Chief Financial Officer spent two days in FLP's Farmington offices before the closing and had full access to FLP's records, including its files on Plaintiff Brenner's and Edwards' charges.

17.     FLP's current assets consist of approximately $12,000 in its bank account, one laptop computer and a note receivable from RAN KEN with an outstanding balance of approximately $700,000. That note is payable in monthly installments with the final payment not due until late 2006.

18.     Virtually all of the note payments received to date by FLP from RAN KEN have been paid out either for attorney fees or as distributions to the shareholders.

19.     Prior to its sale to RAN KEN, FLP was a profitable business. In 1998 it had revenues of more than $1,500,000 with gross profit of over $900,000 and net income of over $170,000. The revenue stream it generated would have enabled it to satisfy a substantial judgment.

4

20. In October 1999, just after the closing with RAN KEN, FLP had a cash balance in its bank account of over $600,000.

21. FLP is currently unable to satisfy anything more than a judgment in a very minor amount.

## Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter of this dispute.

2. RAN KEN is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the New Mexico Human Rights Act, N.M.Stat.Ann. § 28-1-1, *et seq.*, and New Mexico common law.

3. The standards for successor liability under Title VII are specified in *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221 (10th Cir. 1982), and focus on the successor's notice of the charge before the purchase, the predecessor's ability to provide relief and the successor's substantial continuation of the predecessor's business.

4. The Court finds that these factors are met in this case.

5. RAN KEN had notice of Plaintiff Brenner's and Edwards' EEOC charges before the purchase and could have protected itself from the possible successor liability those charges posed.

6. It is clear that FLP cannot provide adequate relief to Plaintiff's at the current time in the event that Plaintiffs prevail at trial and a judgment is entered in their favor. FLP's current assets are de minimis. It has no income from

operations and the evidence shows that note payments it receives are utilized for other purposes, including attorney fees and distributions to shareholders.

7. Even if the note receivable from RAN KEN is considered, that note if not due to be paid in full until late 2006 and when considering successor liability it is not fair to Plaintiffs to deny the imposition of successor liability on the basis that over the next five or more years FLP may receive the proceeds of that note when the successor may be able to provide immediate relief. Furthermore, the amount of the note proceeds may not be sufficient to provide full relief to Plaintiffs.

8. The Court concludes that it is appropriate to assess FLP's ability to pay as of the time of trial, not as of the time of the sale to RAN KEN. However, even if FLP's financial capacity is looked at as of the time of the sale to RAN KEN, the Court concludes that FLP was far more capable of providing substantive relief to Plaintiffs before the sale to RAN KEN than it is now.

9. Following the purchase from FLP in 1999 RAN KEN substantially continued the business of FLP as that concept is defined in *Trujillo*.

10. RAN KEN is therefore a successor to FLP for purposes of FLP's liability, if any, to Plaintiffs under Title VII and will be jointly liable for any Title VII violations for which FLP may be held liable in this case.

11. Pursuant to the reasoning of the court in *Garcia v. Coe Mfg. Co.*, 1997 NMSC 13, 123 N.M. 34, 933 P.2d 243 (1997), the Court concludes that the New Mexico Supreme Court would impose successor liability for New Mexico

6

Human Rights Act violations on a successor based on the same standards as the federal courts utilize for imposing Title VII successor liability.

12.   RAN KEN meets all the requirements of a successor to FLP and therefore will be held jointly liable with FLP for any Human Rights Act violations for which FLP is held liable in this case.

13.   Because the Human Rights Act can be the public policy required under the retaliatory discharge tort in New Mexico, *Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441, 872 P.2d 859 (1994), I conclude that the New Mexico Supreme Court would impose successor liability for a retaliatory discharge in violation of the Human Rights Act on the same standards as the federal courts utilize for imposing Title VII successor liability.

14.   RAN KEN meets all the requirements of a successor to FLP and therefore will be held jointly liable with FLP on any retaliatory discharge claims on which FLP is held liable in this case.

Respectfully submitted,

NOEDING & MOODY, P.C.

By: _____
Christopher M. Moody
Whitney Warner
4300 San Mateo NE, Suite B260
Albuquerque, New Mexico 87110
(505) 878-05150
**Attorneys for Plaintiffs**

We hereby certify that we have served by mail a true and correct copy of the foregoing pleadings upon the following opposing counsel of record this __4__ day of ____June____, 2001:

Alan Torgerson/Mary Woodward
Miller, Stratvert & Torgerson
PO Box 25687
500 Marquette, Suite 1100
Albuquerque, NM  87125-5687
**Counsel for Defendants Farmington London Pub, Inc. and Hamilton**

Cindy Lovato-Farmer
Narvaez Law Firm, P.A.
P. O. Box 25967
Albuquerque, NM  87102
**Counsel for Terry McDaniel**

Gail Gottlieb, Esq.
Sutin, Thayer & Browne, PC
PO Box 1945
6565 Americas Pkwy NE #1000 87110
Albuquerque, NM  87103-1945
**Counsel for Defendant RAN KEN**

Duane Gilkey/Trent Howell
Gilkey & Stephenson, PA
PO Box 25566
Albuquerque, NM  87125-5566
**Counsel for Defendants Farmington London Pub, Inc., and Hamilton**

NOEDING & MOODY, P.C.

By: _____

8